Thank you, Your Honor. I would like to reserve five minutes for rebuttal. Your Honor, may it please the Court. The funding opportunity announcements at issue in this case include grant criteria that make them contrary to law and arbitrary and capricious. I'd like to make three points today. First, the challengers clearly have standing to bring this case and the District Court's ruling on this issue was wrong. Second, the challenge to the Tier 2 funding opportunity announcement is not moot. The government has not stopped enforcing the Tier 2 funding opportunity announcement. There's a Phase 2 scheduled for the spring. HHS continues to go forward with that Phase 2, and they have not disputed, and I don't think they would dispute, that this is a live challenge to the Tier 2 funding opportunity announcement. The Tier 1 opportunity announcement is also not moot, at minimum because it falls within the capable of repetition yet evading review exception to mootness. Third, the Court should reach the merits of this case and should vacate the Tier 1 and Tier 2 FOAs and enjoin HHS from including the unlawful criteria that it included in these FOAs in future funding opportunity announcements. Turning to standing, this is an unequal footing case. The injury in this case is that we were placed at a competitive disadvantage for the government's funding opportunity. The government included award criteria that made us ineligible to compete, but at minimum made it significantly more difficult. This case is directly analysis to the City of Los Angeles case that I identified in a 28J letter filed with the Court yesterday that held that the City of Los Angeles had standing to challenge community policing grants simply because of DOJ's policy of awarding bonus points, even though DOJ took the position that even without the bonus points, Los Angeles would not have won the grant. Exactly the same in this case, just the fact that the unlawful criteria put us at a disadvantage mean that we have an injury in fact. If the Court has no questions about standing, I'd The Tier 2 FOA simply is not moot. HHS has not ceased using it. The only people who are eligible for the Phase 2 that is upcoming are entities that received funding in the Phase 1. Second, the Tier 1 funding opportunity announcement challenge is also not moot for two different reasons. First, this case would comfortably fall within the capable of repetition yet evading review exception to mootness. The funding opportunity announcements had application deadlines in June and the end of the fiscal year was in September, meaning that they would have been awarded as they often are within only a few months. They simply expire too quickly for parties to be able to litigate the entirety of a case before they are capable of being challenged. Second, this would be a voluntary cessation case in our opinion and therefore would similarly be not moot. The government was enjoined by two district courts, but the very fact that there are two district court injunctions shows that a district court injunction is not enough to moot a separately pending federal action. They instead withdrew the Tier 1 2018 funding opportunity announcement, meaning that they would have to show that it is impossible for the wrongful, unlawful conduct to recur and that there is no possible relief that we could obtain that would be sufficient to remedy our injuries. We think that there is a remedy that could remedy our injuries at the minimum. The court could enjoin the practice of including these criteria in these kinds of funding opportunity announcements and could ensure that therefore it is impossible for this to recur, truly impossible. That being said, I would like to say why the Court should reach the merits of this case. We have ten reasons. Okay. This was already briefed extensively by the parties below. They joined issue on this at summary judgment. The issues are purely legal. There is no additional fact-finding to be done in this case and no additional fact-finding would be done if this case were to be remanded. This is also a special circumstances case for numerous reasons. This case involves a need for, these kinds of challenges involve a need for speed. And in fact, if the grant criteria used in the 2018 opportunity announcements are used again in 2020, the challenge that you would be remanding would be overtaken by events because we would just need to sue on the 2020 announcement anyway. Two other District Courts' opinions provide this. But do we know that, that it is going to be used for the 2020 FOAs? We think that HHS's statement in the 2019 funding opportunity announcement, that it intends to continue using these criteria and is only not using them because it has been enjoined from doing so by those District Courts, is strong evidence that HHS will employ similar criteria in 2020. So, but in addition to that very narrow and we think absolutely dispositive point, which is that HHS has said it wants to use these criteria again and in fact intends to do so, there's the larger pattern of how HHS has responded to vacature, which is it then reinstitutes new FOAs, meaning that there's, that the argument from HHS that they may not use opportunity announcements in the future or those opportunity announcements may substantially differ is not borne out by what they've actually done. And then there's an even broader pattern in this case, which is the pattern that we talk about in the briefs where they actually attempted to withdraw existing funding for Tier 1 and Tier 2 grantees and are affirmatively attempting to move the program to an abstinence-only program to the greatest extent possible, which leads into the merits because the criteria included, before getting to that, I want to do the other six supplemental briefing in this case, meaning that there's no prejudice to the government. The issues are unusually clear and straightforward, we think, in this case, for reasons that I'll discuss in the merits. This is a case of exceptional importance as evidenced by the amicus briefs in this case, including amicus briefs from members of Congress and from 20 states and the District of Columbia. This would be the first court of appeals to weigh in on these issues, meaning that it would provide crucial guidance to the agency about what the scope of its authority to interpret the teen pregnancy prevention program statute actually is. And we think that the need for this court to weigh in and provide guidance is especially great here because of the pattern and practice that HHS has been engaging in of inserting these kinds of unlawful criteria into its funding opportunity announcements. On to the merits, if the court has no questions. The Tier 1 funding opportunity announcement is contrary to the teen pregnancy prevention program statute's clear terms because the Tier 1 opportunity announcement does not require the replication of programs that have been proven effective through rigorous evaluation. What it instead requires is that potential grantees weave the goals of optimal health into all of their program materials and incorporate the elements of one of two tools, either the SMART tool or the TAC, in any program that they initiate. That essentially throws open the field rather than a narrow set of defined replicable programs. It means that almost anything could be made eligible as long as you could argue that you met one of the elements in the SMART tool or the TAC. The SMART tool and the TAC are not programs. They are methods of evaluating programs. Reading the SMART tool and the TAC, they in fact self-describe themselves as rubrics or methods of evaluating programs. A program is a curriculum. It's a defined way of achieving something, of teaching something. And I would point the court to ER 1065 to 1070, which actually includes an actual program that is implemented and has been replicated, the Get Real program, which shows that it actually says on day one, you teach this. On day two, you teach this. On day three, you teach this. That is a program, and that's essential to the of the statute, because if programs were any mix of elements and could be put together in any order, it would be almost impossible for something to be rigorously evaluated in a way that could be effectively replicated. Counsel, in terms of the statutory language, does it absolutely make clear that it has to be programs that are replicated and that had been proven effective based on some facts analysis? We think that the face of the statute is absolutely clear. Tier 1 grants, as we read it, are for replicating programs that have been proven effective through rigorous evaluation, and I want to make sure I'm answering your question, but we think that that sentence leaves no ambiguity that what needs to be replicated are the programs. In fact, I don't think the government disputes that what needs to be replicated is a program. They disagree with our definition of program and think that it could be very broad, so broad that it's unclear what would not constitute a program, since it's any sort of defined set of features that are put together toward achieving a goal in the government's view. That is so exceptionally broad, it essentially reads the word programs out of the statute. We think programs is more limited to things like curricula, like teaching programs, and that is how it's been interpreted since it was enacted. No one has ever thought that it could be interpreted in a different way, so the new funding opportunity announcement was really a surprise in terms of how it defined what a program is for purposes of the statute. I'd like to move on to an even more crucial argument, though, and this argument is that the tier one and tier two funding opportunity announcements require program grantees to promote abstinence-only messaging as part of any grant that they program that they implement. If you look at the criteria in the programs, they use coded language, language that is well known to everyone in this area that describes abstinence-only teaching. Optimal health, sexual risk avoidance, cessation support. Anytime that they use the word avoidance, what they mean is abstinence-only. Sexual risk avoidance is the teaching that the only way and the best way to prevent teen pregnancy is to abstain from sex until marriage. The program documents, the funding opportunity announcements require that implement these, make them their program priorities, and prioritize them in order to be both eligible for the grants and then as at least 30 points in the tier two funding opportunity announcements and at least 25 points in the tier one funding opportunity announcements are set aside specifically for whether you are in alignment with those priorities. That is unlawful, and it's unlawful for two different reasons. First, the teen pregnancy program statute sets out certain criteria that it wants the agency to consider when making teen pregnancy prevention program grants. It wants new and innovative programs for tier two, and it wants replication of rigorously evaluated programs for tier one. And it wants them to be medically accurate and age appropriate. The specification of those criteria means that those are the criteria that Congress intended for the agency to prioritize. Congress did not give the agency any authority to prioritize abstinence-only programming in the program, to put a massive thumb on the scale, or even render programs entirely ineligible for funding because they don't implement abstinence-only messaging. Rigorously evaluated programs, the vast majority of them, have been shown to be effective without requiring the teaching of abstinence-only as the only way to effectively prevent teen pregnancy. The funding opportunity announcements are also unlawful because they change the definition of medically accurate and age appropriate without any reasoned basis, such that they read the word medically accurate out of the statute. Prior teen pregnancy prevention program opportunity announcements defined medically accurate to mean supported by the weight of medical evidence. The new opportunity announcements simply say that medical accuracy is measured by whether there's references to peer-reviewed publications in a grant application. So earlier opportunity announcements required that it actually be supported by the weight of medical evidence as supported by peer-reviewed evidence. The new ones remove that requirement and simply make it so that as long as you reference peer-reviewed literature, you are medically accurate. They also then further make it that individual program applicants may specify for themselves, determine for themselves that they are medically accurate and simply certify it to the agency. Whereas prior opportunity announcements had actually incorporated a review whether or not they in fact were medically accurate. That is supported by the weight of medical evidence. So the removal, the unreasoned removal of those, of medical accuracy from the statute, from the opportunity announcements is an independent reason that it is contrary to the teen pregnancy prevention program statute and arbitrary and capricious. Finally, I just want to make one other point, which is that the Tier 2 funding opportunity announcements purposes are contrary to the teen pregnancy prevention program statute. Tier 2 was designed to allow for the testing of evidence-based approaches to preventing teen pregnancy. It has been repurposed in the Tier 2 FOA to prioritize abstinence-only programs at the expense of other effective programs. That is contrary to its purpose. And therefore, for that reason, it is also arbitrary and capricious and contrary to the statute. I'd like to reserve the remainder of my time. Roberts. Let me ask you a question. I'm just curious. In the New York case, your Tier 2 argument did not prevail. It was appealed at the Second Circuit. And you dropped your appeal. Why? The government had also taken appeals. They had taken a cross appeal in that case. And the government's decision to drop that appeal, the most important thing for us, it's because of the priorities that are at stake. For us, the standing ruling below is extremely troubling. And we absolutely need to see that reversed. We believe that we also prevail on Tier 2 on the merits, but the balance of strategic considerations meant that we wanted to take this appeal because we needed to take it. But we did not need to take that appeal and pursue it. Thank you, Your Honor. Any further government? Is it Ms. Lilley? Lilley, yes. May it please the Court, Janie Lilley for the federal government. Your Honor, I'd just like to respond to a few questions raised by plaintiff's presentation. Of course, we dispute that the dispute about the Tier 2 funding announcement is live. And I refer the Court to the Tier 2 funding announcement. Here I'm at the excerpts of agency described Phase 2 of the funding announcement as a separate competition and anticipate that Phase 2 application in spring 2020. But certainly that any controversy about a putative Phase 2 is not live. And plaintiff's claims about Tier 2 are limited to the criteria imposed in fiscal year 2018. The money for the Tier 2 projects in fiscal year 2018 has been obligated. That fiscal year has expired. Fiscal year 2019 has come and gone as well. And for those reasons, the Tier 2 dispute is also moot. We, of course, argue that the Tier 1 funding announcement for fiscal year 2018 and any controversy over that is moot by virtue of the obligation of funds for fiscal year 2018, the expiration of that fiscal year, and the fact that the agency issued a different funding announcement for Tier 1 in fiscal year 2019. The plaintiffs have suggested that this Court needed to, should reach the merits of this case for a variety of reasons. But we submit that there is no reason for this Court to depart from the usual practice of allowing the District Court to reach the merits in the first event. If, of course, the Court were to disagree with our arguments about judicial disability. Before addressing the merits, could we pause another minute and on mootness? Yes, Your Honor. Could you explain to me the government's position as to why this type of case isn't capable of repetition, yet evading review, and also why it's not a voluntary cessation case? Well, Your Honor, because it is sort of moot for the reasons that I stated. With respect to Tier 1, the agency has moved on to a different set of criteria, most of which, or perhaps all of which, plaintiffs don't object to. With respect to the Tier 2 funding announcement, again, that grants competition and the grants awarded thereunder have expired and the agency is planning, as scheduled, to issue new funding announcements in 2020. So there's no reason to expect, on the basis of this record, that the agency would continue these criteria that plaintiffs object to, and for those reasons. But in any event, if the plaintiffs do not have standing and did not have standing at the time, in large part because the plaintiffs could not show that they would suffer a competitive disadvantage. The district court showed, as the district court held, these plaintiffs had performed risk reduction projects in the past. In fact, they describe in their complaint that their previous teen pregnancy prevention projects that had been funded were risk reduction projects. That was one of two strategies available to be funded under the fiscal year 2018 funding announcements, and they didn't detail why they wouldn't be competitive, other than to say the funding announcements required abstinence-only programming. And as the district court correctly held, that's not correct. The funding announcements offered two strategies, sexual risk avoidance, to which plaintiffs object and say they would not be willing to perform in sexual risk reduction that plaintiffs, according to their own complaint, have performed in the past. And for that reason, they could not show injury in fact. And secondly, the plaintiffs' injuries were not redressable by relief they claimed. There are no further questions. Can you address the city of Los Angeles case that just came out, which only reaffirmed that a slight competitive disadvantage is sufficient to confer standing. So how do you apply that to the facts of this case? Well, there, Your Honor, the plaintiffs had said they were unwilling to do the two things that would result in increased, I think, premiums under the scoring rubric, the certification about cooperation with federal authorities or the selection of a certain type of project. Here, plaintiffs have said only that they are unwilling to do abstinence-only, but as the district court held, that's not what's required by the funding announcement. And so they haven't been able to make the showing that they would be placed at a competitive disadvantage. Your Honor, our final point was that the plaintiffs' request for speedy resolution on the merits of the court were to disagree with us, that this now-ancient funding announcement and disputes over it are still live and that they had standing do not suggest that this court should reach the courts rather than remand the case to the district court in the usual course. There's no need for speed in this case. Plaintiffs will suffer no prejudice by a remand to the district court if the court should decide that the case is live and otherwise justiciable. And for those reasons, we would ask that the court affirm the judgment. Thank you, Your Honors. I would just like to briefly respond first on standing. Not only does the requirement that we promote abstinence-only messaging in our programs constitute an injury because it puts us at a competitive disadvantage because we don't wish to actually engage in such messaging. And I would point the court to the Eastland, Grubb, and Marth declarations that discuss at great length what programs we actually implement and how they are inconsistent with the funding opportunity announcements. But moreover, in order to be eligible, you must be implementation ready. We have programs that we implement that are replications of prior programs. And those programs are inconsistent with the funding priorities that are required under both Tier 1 and Tier 2. These programs are actual curricula books that you actually go and obtain from a company that makes the curriculum. For us to weave the goals of optimal health into those most likely because we licensed a particular curriculum and would be inconsistent with our organization's missions. So the argument that we don't have an injury in fact in this case is false, is wrong. I also want to address mootness. Tier 2 is not moot. The Tier 2 funding opportunity announcement makes available Phase 2 program grants only if you obtained Phase 1 program grants under that opportunity announcement. It limits the pool of eligible individuals. So we can't compete for Phase 2 of the 2019 opportunity announcement because we were not successfully awarded Phase 1. How the government can say that vacature would result in nothing in that case, I don't fully understand. But in any event, this injury is capable of repetition and evading review and not just capable but likely. This program runs on five-year cycles. The first grant awards were made in 2010, then in 2015. This 2018 funding opportunity announcement we believe was because they anticipated successfully pushing all existing grantees off of the five-year cycle and initiating an entirely new out-of-cycle grant program. They were enjoined from doing that by district courts nationwide. But that means that the next time that $500 million in program grants under the Teen Pregnancy Prevention Program will become available is 2020. That is right around the corner. Enjoining the practice of inserting these criteria into the FOAs would significantly aid us in obtaining clarity about the future of this resolution of these claims because the government will fiercely contest this exact same suit when we bring it in 2020 when they insert the same criteria into the 2020 opportunity announcements. Therefore, this Court should reach the merits and hold that the 2018 FOAs are unlawful, declare them unlawful, and should enjoin HHS from using such unlawful criteria in the future. Thank you, Your Honors. I have one question. On your position, is there a difference between Tier 1 and Tier 2? For many of our claims, there is no difference. Tier 2 does not, the government doesn't have the And it's actually affirmatively contrary to Tier 2's purpose to require the abstinence-only messaging required by the grants. Okay, thank you. Thank you, Your Honor. I thank both counsel for their arguments. I also don't want to be remiss in thanking both counsel for coming all the way from Washington, D.C. to help us out, which we appreciate. The Planned Parenthood case shall be submitted, and the Court will adjourn for the day.
judges: Gould, Nguyen, Presnell